## J. BROOK v. G. W. MORELAND.

1—W, claiming to own land in Illinois, conveyed it with warranty of title to M, who paid for it by transfer to W of his equitable title to certain land in Texas. W sold the land in Texas to B. M, discovering that W never had title to the land in Illinois, brought suit in Texas against W and B, charging fraud against W and collusive knowledge thereof against B, and praying a rescission of the transactions, and restitution of title and possession of the land in Texas. The jury found that plaintiff's allegations as against W were true; but returned no other verdict as to B than that he "pay no rent." *Held,* that on this verdict it was error to render judgment against B, divesting him of the land in Texas.

2—On the case thus stated, the only issue as between the plaintiff and B was, whether the latter was chargeable with collusive knowledge of the fraud of W; and in the absence of a finding by the jury that he was so chargeable, no judgment could legally be rendered against him.

3—There being nothing in the evidence tending to charge B with such knowledge, and it appearing to this court that the plaintiff could not make a better case against him on another trial, the cause is not remanded, but the judgment is reversed as to B, with decree in his favor for the legal title, against the holder of that title, who was also a party to the suit.

4—No appeal having been taken by W from the judgment rendered against him, this court disclaims the power to adjudicate the cause so far as his rights are involved; but intimates the opinion that the proper remedy of the plaintiff, as against W, would have been a suit on the warranty of title, in the courts of Illinois.

5—(On motion for rehearing.) Admitting that W is insolvent, so that the plaintiff can have no effectual recourse upon the warranty, still B, being in possession and being a *bona fide* purchaser, can not be subjected to loss for the purpose of indemnifying the plaintiff.

6—The fact that B only acquired an equitable title does not impair his rights in this case—there being no conflict of rights or interest between him and the holder of the legal title, who was a co-defendant with him.

Appeal from Grayson. Tried below before the Hon. Hardin Hart.

This record presents a somewhat complicated case, but a a more minute statement of the facts than that given in the opinion would not elucidate the rulings of the court.

The brief for the appellee on his motion for rehearing did not reach the hands of the reporter, who is therefore unable to give the cases cited in it, and referred to by the court in refusing the motion.

*Brinkley & Maxey,* for the appellant.

*G. A. Evarts, S. Hare* and *W. M. Walton,* for the appellee. Was Brook a purchaser in good faith for a valuable consideration? We respectfully submit that he was not. (See the chain of title under which Brook claims.)

The legal title to the property conveyed by Warren to Brook remained in Joel Hager. Warren gave a legal title, or what purported to be one, to Brook, when he only held an equity, and at the same time transferred the bond for title, thus giving Brook actual notice on what his (Warren's) title was based, viz: the title bond of Hager to Moreland. The bond of Hager being in the hands of Warren, and at the date of the transfer to Brook, five years old, gave actual notice to Brook where the legal title was, and put him on inquiry as to whether any reasons existed why the holder of the bond should not receive the legal title. Brook was bound to know, and did know, that his title from Warren was worthless, unless it was vitalized by Hager, who held the legal title.

When Brook purchased from Warren, with a knowledge of where the legal title was vested, he purchased at his peril, and was bound to look to his vendor's title, and his capacity to convey a perfect title. (1 Chancery R., 565.) He was bound

to inquire of Hager. (Humphries v. Freeman, 22 Tex., 50; Edrington v. Rogers, 15 Tex., 188; Wright v. Linn, 16 Tex., 42.) Inquiring of Hager, what would Brook have learned? Sufficient to have deterred him from purchasing from such a vendor as Warren, from whom he could not acquire a valid title.

The law making it the duty of Brook to make inquiry charges him as if he had inquired and learned the bad faith of Warren. Being the purchaser, he was bound to look to the capacity of his vendor. (Murry & Winter v. Ballou & Hunt, 1 Johnson's Ch. R., 565; Martel v. Somers, 26 Tex., 551; Powell v. Haly, 28 Tex., 53; Story's Eq. Jur., §§ 333, 399, 400, and notes to said sections.)

MORRILL, C. J.—Action to rescind an executed contract. The suit was instituted by Moreland against Warren and wife, and appellant, Brook. Plaintiff alleged that in October, 1858, he having an equitable title to a certain lot of land in Grayson county, to be perfected into a legal title upon the payment of three hundred dollars, conveyed this land to Warren and wife, who in return assumed to pay the sum due, and also conveyed to plaintiff certain lands in the State of Illinois, by warranty titles.

That in May, 1863, Warren sold to Brook the land purchased of plaintiff.

Plaintiff further details that soon after he made the contract with Warren, he went to Illinois, when and where he ascertained that Warren did not, and never did own the land which he pretended to convey to plaintiff; and it is further alleged that Brook knew that Warren was acting fraudulently with plaintiff when he purchased the lot in Grayson county.

The request of the court is that the conveyance from himself to Warren and wife of the lot of land in Grayson county, as well as the conveyance of the same by Warren and wife to Brook, be rescinded, and plaintiff be placed into a legal possession thereof, with proper title. Brook answered, denying the

statements of plaintiff, so far as related to himself. A judgment by default was taken against Warren, and the cause was submitted to the jury, who "found that the allegations in plaintiff's petition in reference to defendant, *Warren, to be true.*" The only fact found relative to Brook was, "that *he pay no rent.*"

Upon this verdict the court divested Brook of the land, and he only has appealed to this court.

As Warren is not before us, we have no jurisdiction of the case so far as he is concerned. The suggestions made by the counsel relating to the sufficiency of the citation as to him, as well as to the other points taken touching Warren's rights, can not legally receive adjudication. Admitting and assuming as correct the verdict of the jury, the judge was not authorized to enter up a judgment thereon against Brook. The only point really in issue between the plaintiff and Brook was whether Brook purchased the land in good faith, or whether he was chargeable with a knowledge that the charges and allegations relative to Warren were true. Without this finding there was nothing authorizing the district judge to enter any judgment or decree against Brook. In looking over the testimony there is nothing therein that would authorize a different verdict as to Brook. The plaintiff, therefore, failed to make out his case, and as he remained satisfied, and there is no pretense that he could make a stronger or better case for himself, our duty is prescribed by Art. 1562. We are not authorized, as above stated, to either reverse or affirm the judgment so far as it affects Warren; but inasmuch as the judgment against Brook was not authorized, it was erroneous. The only question remaining is whether the judgment against Brook shall be remanded for further adjudication.

Without further testimony showing that Brook was not an innocent purchaser, no judgment could be rendered against him, and it is very questionable whether any proper case has been made out against Warren. The proper forum to adjudicate upon the validity of the title to the land situate in the

State of Illinois, would be the courts of that State, where the grantor resides. And whether the cause were tried in Illinois or Texas, there certainly must be better testimony to prove a breach of warranty of title than a citizen of Texas, of immature years, and who is unable, both from her age and occupation, to give a reason satisfactory to a court for the cause of her belief.

The deed which is the foundation for the action, is also the basis of the kind of action to be brought. The legal and primary action is a suit for breach of warranty, and no cause is assigned why this suit was not brought, instead of the equitable action of rescission of contract.

Were it the intention of the parties, the plaintiff and defendant Warren, to combine to take from Brook the land in Grayson county, it is difficult to perceive a way better calculated to accomplish that object than the one resorted to in this case.

When Moreland sold the land in controversy to Warren, he conveyed all the right to it he had, thereby authorizing Warren to keep it or sell it as he would any other property. And when Warren sold the land to Brook, he conveyed to him all the title that both he himself and his vendor had. If Warren acted fraudulently with Moreland, unless Brook was cognizant thereof, he is not to be affected thereby. As there is no testimony showing anything illegal or inequitable on the part of Brook, rescinding the contract between Moreland and Warren can have no effect on Brook.

As we have reason to suppose all the facts are before us, there is no reason for remanding for further proceedings. It is, therefore, ordered that the judgment as to Brook be reversed, and that defendant, Hager, be required to make title to the land in controversy to Brook, and that Brook recover all costs, both in the District and Supreme Courts.

Judgment accordingly.

MORRILL, C. J.—The only question that arises, or can arise, is, which of the parties must suffer in consequence of the fraud

of Warren? Moreland sold the property to Warren, and, relying upon his honesty that the property received in exchange was his own property, was deceived and defrauded in amount equal to the value of the property conveyed to Warren, less three hundred dollars due to Hager on the purchase.

Warren sold the property he got from Moreland to Brook, who purchased in good faith.

Admitting that Warren is insolvent, it follows that if Moreland can not recover from Brook the property thus sold, he will be damaged to the value of the property sold; and if he does recover, then Brook will be damaged in the same amount—or, in other words, one of two innocent parties must suffer from the fraud of a third party.

In 1 Story's Eq., §§ 640, 108, 165, and the numerous references there cited, the principles of equity are in favor of Brook. "*In æquali jure melior est conditis possidentis.*" "As against *bona fide* purchasers for a valuable consideration, without notice, courts of equity will grant no relief, because they have at least an equal equity to the protection of the court."

The authorities cited by counsel would be applicable to a different case. Were Brook suing Hager for a title to the land, and Hager should resist because Moreland had not paid him what was specified to have been paid in the bond for title, then the authorities for counsel, as well as the above authorities from Judge Story, would be applicable against Brook.

Rehearing refused.