## DUTTON v. KINSEY.

### No. 13834.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 25, 1938.

Rehearing Denied Feb. 10, 1939.

John L. Poulter, of Fort Worth, for appellant.

Claude Spratling, of Fort Worth, and Jennings Brown, of Decatur, for appellee.

BROWN, Justice.

On March 16th, 1915, G. A. Dutton and his wife, A. E. Dutton, conveyed a certain tract of land, situated in Wise County, Texas, to one J. E. Hampton, a brother-in-law of Mrs. Dutton. The consideration recited is $1,460 cash, and the execution by Hampton of a promissory note for the sum of $500, payable on January 1st, 1920, secured by a vendor's lien on the land conveyed.

Mrs. G. W. Kinsey, a widow, became the owner and holder of the note by purchase thereof, before maturity, and default being made in the payment thereof, after the note and lien had been twice extended, she brought suit on the note and for foreclosure of the lien under the following circumstances developed by the testimony; Mrs. Kinsey testified that Hampton came to see her and exhibited the said deed and told her he had purchased the property from Dutton and wife and wanted her to take up the note, that Dutton wanted all cash so he could buy another place in Oklahoma; that, subsequently, Mr. Dutton came to see her several times in an effort to get her to buy the note, that he had it in his possession and exhibited it to her, and she finally bought it on April 3rd, 1915; that she paid Dutton the face value of the note, $500, and he endorsed the same—it being made payable to Dutton and A. E. Dutton—by endorsement for and in behalf of his wife,

and by his personal endorsement, and that Dutton executed a transfer of the note and lien to her; that at the time Dutton had the deed in his possession, and he placed the revenue stamps on same, and her recollection was that Dutton mailed the deed to the County Clerk of Wise County for recording, and that she mailed the transfer for a like purpose. The deed shows that it was recorded subsequent to the sale of the note. She testified further that Dutton came to see her thereafter and told her he had failed to find a place in Oklahoma that suited him and that he had bought the place back from Hampton and he was the person now responsible to her for the payment of the note; that, at his request, she executed two different extension agreements; that Dutton paid some interest on the note, and on several occasions tried to sell the place, on one of which she agreed with the prospective buyer to reduce the note by crediting the note with some of the accrued interest, but all trades fell through. The deed, from Hampton and wife, reconveying the land to Dutton, and in which Dutton assumed the payment of the note, is dated June 5th, 1915, but was not recorded by Dutton until April 18th, 1916—more than ten months after it was executed.

It was developed by Mrs. Dutton's testimony that she knew that her husband's trip to Decatur, Texas, on which she accompanied her husband and Mrs. Kinsey, had to do with the note. She said: "Well, they had business; something concerning the outfit some way. It was the note, I reckon." She testified that she knew the extension of the note was being asked for and granted. And she testified that she knew her husband received from Mrs. Kinsey $500 for the sale of the note.

Mrs. Dutton, without the joinder of her husband, and without an order of the court permitting her to do so, and without pleading any fact showing her right to sue without the joinder of her husband, answered, claiming the property as her sole and separate estate, inherited from her parents, and that same was and is her homestead; that the deed executed to her brother-in-law, Hampton, was never delivered because the consideration was never paid by him; that it was put on record without her knowledge and consent; that the reconveyance by Hampton and wife to Dutton was a nullity and made in fraud of her rights; that she never consented to any lien being placed on her property, and all instruments purporting to show any sale of her lands, and

to create any lien thereon, "are each and all illegal, fraudulent and void, and could not in law affect the right and title of this defendant to her said land," and as a cross action she prays that plaintiff take nothing against her, and "that she recover over against the plaintiff, and against G. A. Dutton (her husband), jointly and severally, the title to the land described in plaintiff's petition, and that all claims, clouds and liens attempted to be cast against her title be cancelled and removed, etc."

Thus it appears that the parties to the suit are: plaintiff sues Mr. and Mrs. Dutton to establish her debt and lien and for a foreclosure thereof, while the defendant, Mrs. Dutton, sues for the relief indicated in the quoted prayer, as against the plaintiff and her husband, G. W. Dutton, by way of cross-action.

In her supplemental answer, Mrs. Dutton alleges her long ownership and residence upon the premises, and that the plaintiff bought the note without exercising care and diligence, "that if any such care had been exercised or any diligence used, the plaintiff would then have learned that such note was not a valid vendor's lien on said land, and was illegal and could not be enforced." She further pleaded "that when she signed the deed to J. E. Hampton, it was in an attempt to carry out an honest, bona-fide sale of said land, and that said sale was never completed, and such deed was never delivered, and such sale was abandoned, and this defendant never knew that any vendor's lien note was ever made, or ever transferred to the plaintiff herein, or that she was claiming any lien on her land until a short time before the filing of this suit; and that she has never done any act or thing in connection with this whole matter except that which was sincere and honest and above-board in every way, and she has never been guilty of any scheme, fraud or conspiracy, as charged, by the plaintiff herein."

The plaintiff, in answer to the second amended answer of Mrs. Dutton, had pleaded a scheme and conspiracy engaged in by Mrs. Dutton, her husband and her brother-in-law, Hampton, to make the deed and vendor's lien note for the purpose of disclosing a bona-fide transaction and in order to sell the note to her, and pleaded estoppel on the part of Mrs. Dutton to deny the validity of the debt and lien.

The case was tried to a jury, on special issues, and the following findings were made: (1) that the sale by Dutton and wife

to Hampton was simulated for the purpose of giving the appearance to the note in issue of a valid, secured, vendor's lien on the land, (2) that the reconveyance by Hampton and wife was a part of the scheme to conceal from Mrs. Kinsey the fact that the sale was simulated, (3) that the deed from Dutton and wife to Hampton was delivered to Hampton, (4) that Mrs. Dutton had knowledge of the delivery, (5) that Mrs. Dutton had knowledge of the existence of the vendor's lien note in question, (6) that she had knowledge of the sale of the note by her husband to Mrs. Kinsey, (7) that when Mrs. Kinsey purchased the note she had no knowledge, or information, that led her to believe, or reasonably should have led her to believe, that the note and lien were not genuine and valid, (8) that Mrs. Dutton entered into a conspiracy with her husband and her brother-in-law, Hampton, to effect a simulated transaction, (9) that Mrs. Dutton authorized her husband to consummate the sale of the note to Mrs. Kinsey, (10) and to make and execute the two extension agreements, and (11) that Mrs. Dutton authorized the delivery of the deed to Hampton.

Judgment having been rendered for Mrs. Kinsey for the relief prayed for, and denying Mrs. Dutton relief on her cross action and answer, Mrs. Dutton brings the case before us for review, making Mrs. Kinsey and G. A. Dutton defendants-in-error. The writ of error bond is executed by Mrs. Dutton (without the joinder of her husband) and two sureties.

Here we have what to us is a novel situation—we do not find the parties (it being the wife alone, here) relying upon a simulated transaction, in relation to the homestead, and alleging that the purchaser of the vendor's lien note, growing out of such transaction, had notice of the possession actually exercised, and urging that the note was purchased with such notice, or with the knowledge that the actual, visible possession of the property would of necessity bring to the purchaser. Here we find the wife asserting that the deed was executed by her in good faith, to carry out a bona fide sale, but that the sale was never consummated, and if the deed were delivered and the note sold, same was done so without her knowledge, or consent, and that the purchaser of the note was guilty of a want of diligence in not inquiring into the situation in order to ascertain from her the true facts.

The first three assignments of error are grouped and treated together. They are that the trial court erred (1) in refusing to give Mrs. Dutton a peremptory instruction, (2) in denying her motion for judgment, and (3) in rendering judgment for plaintiff, "because such judgment is contrary to both the law and the evidence, and is unsupported by any legal evidence in this case."

■ Assuredly, under appellant's theory of the case, she was not entitled to a peremptory instruction, nor was she entitled to a judgment notwithstanding the verdict.

■ If we should consider the third assignment of error, which is too general, in that it only complains of the judgment being contrary to both the law and the evidence, in the forepart of the assignment of error, and is distinctly multifarious, in that it asserts that the judgment is contrary to the law, and contrary to the evidence, and is unsupported by legal evidence, it is clear to us that the judgment is not contrary to the law, is not contrary to the evidence, and is supported by legal evidence.

■ Appellant's first proposition, to the effect that when Mrs. Kinsey purchased the vendor's lien note she was charged with the knowledge of the true ownership of the lands, as shown by the deed records of Wise County, disclosing that same constituted the separate estate of Mrs. Dutton, has no application here.

Such interest as Mrs. Dutton had she acquired by inheritance, and the land was set apart to her by a partition decree of the Wise County district court, but such decree was not placed of record, as is required by the provisions of Article 6638, R.C.S.

The decree was rendered at the May Term, 1914, of the district court of Wise County, and was not filed for record until June 14th, 1937, long after this suit was brought by Mrs. Kinsey.

■ Therefore, the partition decree could "not be received in evidence in support of any right claimed (by Mrs. Dutton) by virtue thereof."

The unrecorded judgment of partition afforded no notice to Mrs. Kinsey of the claim or estate held by Mrs. Dutton.

The warranty deed, executed by Mrs. Dutton and her husband to Hampton, makes no mention nor does it hint at the matter of

the land conveyed being the separate estate of Mrs. Dutton.

So far as Mrs. Kinsey is concerned, the land may have been the community estate of the Duttons.

The evidence before us discloses that Mrs. Kinsey was a purchaser of the note in good faith and without any notice of any separate estate claim on the part of Mrs. Dutton.

The second proposition is to the effect that Mr. Dutton had no power, under our laws, to sell or otherwise dispose of his wife's separate property without her consent, and his unauthorized acts in recording her deed without her consent, and his endorsement of a note executed in payment for her property, passed no title and Mrs. Kinsey could not thus acquire the note sued on and enforce a lien against Mrs. Dutton's land without her consent.

One of the most recent decisions relied upon by appellant is Bank of Washington v. Moore, Tex.Com.App., 296 S.W. 868, but the principle there announced is not applicable here. The court said [page 871]: "The land being a part of her separate estate, her husband had no control over it, and, of course, could not place upon it any valid lien by any act of his in which she did not join by an instrument in writing."

The wife in the instant suit, by solemn deed, which she alleges she made in good faith, conveyed the land to her brother-in-law, Hampton, and created the debt and lien here involved, her husband having joined her in the act.

She set in motion the machinery through which the note and lien were brought into existence and through which Mrs. Kinsey was induced to part with her money, in the purchase of the note and lien.

■ It is indeed a wholesome rule in equity, that where one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer who, by his own acts and conduct, has enabled such third person to practice a fraud or imposition upon the other party.

■ Granting that Mrs. Dutton's contentions are true, she is bound by this rule, under the facts developed in the case at bar.

■ Again, quoting from Brook v. Moreland, 32 Tex. 380, the following is taken from Story's Equity: "As against bona fide purchasers for a valuable consideration, without notice, courts of equity will grant no relief, because they have at least an equal equity to the protection of the court."

The gist of Mrs. Dutton's contention is that her husband has deliberately defrauded and wronged her by delivering the deed she executed and by selling the note that was executed in part payment of the land conveyed by the deed, without her knowledge, or consent, and without any authority upon his part to do so, and such is the substance of the third and fourth propositions presented.

The answer to such contention is that the jury has found that Mrs. Dutton and her husband and brother-in-law entered into a scheme whereby the deed was executed and the vendor's lien note was brought into existence for the purpose of giving the whole transaction a bona fide appearance (so that the note could be sold), that the deed was delivered to the brother-in-law and that Mrs. Dutton had knowledge of the delivery and of the existence of the vendor's lien note, and of its sale to Mrs. Kinsey by Mr. Dutton, and that she authorized her husband to sell the note, to make the extension agreements, and to deliver the deed, and that Mrs. Kinsey, when she purchased the note and lien, had no knowledge, or information, that led her to believe or reasonably should have led her to believe that the note and lien were not genuine and valid.

No assignment of error predicated either upon error in submitting issues because of a want of support in the evidence, or error in the verdict, in that the findings are not supported by the evidence, has been presented.

Under the theory presented by Mrs. Dutton, judgment was properly rendered for the plaintiff on the verdict returned.

■ The negotiable instruments act—Arts. 5932 to 5948, inclusive,—had not come into existence at the time the note was sold to Mrs. Kinsey, and the contention that Mrs. Dutton had to personally endorse the note and personally sign the assignment of the note and lien is not well taken.

The note was made payable to Mr. and Mrs. Dutton and Mr. Dutton's sale, endorsement, delivery and assignment of the note and lien, under the facts developed in this case, is binding upon Mrs. Dutton.

Paragraph 119, pages 157 to 159, Speer's Law of Marital Rights, cited by appellant, is authority supporting our views. The text declares:

"The husband cannot any more than any other person, convey that which does not belong to him, and 'an unauthorized signing of his wife's name would not give him the power to do so.

"What is here said presupposes that such notes show upon their face the wife's separate interest. For if they are payable simply to her without apt words limiting the same to her separate use, they will be presumed to be community property, upon principles hereafter discussed, and subject to the disposition of the husband alone. He might transfer them by his own endorsement as well as by that of his wife, and one taking the paper, relying upon such presumption, would have a good title."

There is nothing in the face of the note, or of the deed reserving a vendor's lien to secure the note, that shows, or attempts to disclose, the interest of Mrs. Dutton, or attempts to limit the note to her separate use.

The contention that the suit is barred is not well taken.

The assignment of error complaining of giving judgment personally against Mrs. Dutton for the attorney's fees stipulated for in the note and for costs is not well taken.

While it is true that in the forepart of the judgment it appears that the court seems to render judgment against Mrs. Dutton for the attorney's fees, the judgment being clumsily worded, it is apparent that the court intended to render judgment of foreclosure of the lien as to the attorney's fees, and the succeeding paragraph awards judgment personally against G. W. Dutton for the principal, interest and attorney's fees; and then the court renders judgment against Mr. and Mrs. Dutton for all costs.

The contention that a judgment against Mrs. Dutton for costs is not authorized because she is a married woman is not well taken, seeing that she filed a cross-action and sought affirmative relief and made of herself a plaintiff in and under such issues. Morton v. Calvin, Tex.Civ.App., 164 S.W. 420, writ refused.

The assignment of error complaining of the refusal to give a new trial because of newly discovered testimony is not well taken because a lack of diligence is shown in discovering the evidence, and it appears to be cumulative only. The discretion of the trial court in refusing to grant a new trial will not be disturbed by us.

All assignments of error are overruled and the judgment is affirmed.